The next case on the calendar is Varno v. Canfield. Hi, I'm Betsy Varno, a pro se litigant. Good morning. Wait just one second so they'll shut the door in the back and then you won't hear so much noise behind you. Thank you. We're good to go. If it may please the court, I'd like to begin. To start, the district court failed to acknowledge the material significance of my status as a permanent employee. As the CSEA contract that is designed for permanent employees has special provisions that protect the civil and human rights of members of a protected class. The county ignored the CSEA special provisions and in doing so rejected the less discriminatory process set up by the contract. The district court failed to acknowledge my complaints about the noncompliance, which were in fact a complaint about protected activity. The district court failed to consider the appellee's retaliatory denigration of my professional skills each and every time I asked questions for clarification about the noncompliance or I asked for an explanation about the review process. The district court failed to consider that this constituted a hostile work environment that is subject to the continual violation doctrine. The November 20th. Ms. Marno, can you explain, and we took a little of your time so you'll have a few extra moments so don't worry about the yellow light, why this constituted a continuing violation? I mean the idea of the continuing violation doctrine is that there's acts of discrimination over time as opposed to discrete acts. But your adversary, if I understand the argument correctly, is that demotion was one act in time. Yes, that was the determination of the district court. However, it wasn't. My demotion, the reasons and justification for my demotion were the same as my termination, and it was not two separate acts. It was a series of more acts every week. Events took place. The demotion was based on the denigration of my professional qualifications, which younger male defendant, Borsy, used to justify, well, if I'm incompetent, there's an emergency situation, he needs to take my place, which he did. So we swapped jobs. At the time, I thought, well, he has been with the department longer than I, and I do need to recognize that this is the only professional job he ever had. He was there a long time. However, I thought, okay, I'll accept the demotion, but I'm going to get national certification as a planner to demonstrate I do have the skills to perform as a planner. However, what I found over a year is that my ability to succeed made them lose face. They needed to terminate my employment to demonstrate I was incompetent, I need to be out of there. But it was based without any discussion of what was expected of me. It was based on when I'd say, well, what do you expect of me? How will I be evaluated? I was told, we don't need examples.  And then when I asked Canfield for an explanation, he says, if you want to keep your job, figure out how to sell yourself to Andy and Mike. And I said, sell myself? You mean like marketing? And he says, no, that's not it. And if you can't figure it out, you don't have the mental capacity or the understanding to work in the department. So it was obviously sexual. And that characterized the entire employee review process that I was subjected to. That was a hostile work environment. I could never ask about the evaluation because then they would twist it around and say, well, you obviously don't understand how things work here. You can't work here if you don't understand. So I couldn't say anything. And I complained about protected activity. That is a protected activity. But yet, in the appellee's- You complained to Susan Babcock about- I did. I complained to the director of the department. I complained to the HR representative, Susan Babcock. I complained to the president of the CSEA union. I complained to two presidents of the CSEA union. The union told me, yes, here's your contract. You need the contract that shows that whenever there's a negative concern about a permanent employee, it needs to be documented in writing and discussed with you so you can figure out what's expected of me and I can resolve it. I think we understand your argument. Obviously we have your briefs. You've reserved some rebuttal time. Yes. And we'll hear from your adversary. Thank you. Good morning, Your Honors. May it please the Court, Laura Spring for the defendants. I'll call the county defendants for ease of discussion. Obviously this is a discrimination case based on Title VII and the ADEA and retaliation. There were some other causes of action, and I just want to put on the record that we believe they've been waived. They haven't been briefed. There's a 1983 claim, Equal Pay Act claim, so I won't address them unless the Court requests. I would like to emphasize here that on the issue of demotion, that that was a discreet act. The claim was never brought to the EEOC within 300 days of the demotion. Excuse me. It was viewed by Judge Lowe initially. That was never appealed from that order, and so it's our belief, and obviously the brief reflects that that now is barred from the claim of Title VII and the ADEA claim. You made a statement, I believe, in your brief that there was no protected activity here, but that is wrong. Do you acknowledge that that statement is wrong? Because in the record, the plaintiff does say that she made complaints to Susan Bocock, the human resources representative. We do not believe that there was a protected activity in this case. Obviously under the definition of what a protected activity is, there has to be a complaint about some type of discrimination or unfair treatment. That was never identified here. There's nothing in the record that Susan Bocock received a receipt. There's only conclusory allegations by the plaintiff. No, she testified. Go ahead. Wasn't there deposition testimony to that effect? Of the plaintiff. Of the plaintiff. Correct. And that would seem to me more than adequate to establish a prima facie case. Right. But the question of whether or not that's a protected activity is our position is that it's not a protected activity because there has to be something that the plaintiff would engage in an activity that would oppose discrimination. That was not the complaint that was made here. No, that is not retaliation. But let me point to page, I think it's, well, I don't know what page it is. But the deposition transcript says the question was, did you make any complaints to anybody at the county while you were employed that you felt that you were being discriminated against or harassed because of your age and sex? Yes. Yes. Question, who was that? Answer, Susan Babcock. When did you make that complaint? April or May in 2009. And you are telling us that that's not sufficient? What I'm saying, Your Honor. That's a yes or a no? Is that not sufficient as a complaint? I do not believe that's not sufficient. Explain to me why under Title VII that is not a sufficient complaint when someone complains to an HR person about being discriminated against based on her age or sex. Your Honor, I agree with you that a protected activity to an HR person that they complained about some type of age, sex, or whatever protected class would be a protected activity under the way we define protected activity. I do not believe that that testimony is accurate to the extent that this was made to Susan Babcock under, we do not have. So that's a wonderful fact dispute, right? It's a fact dispute that does not warrant a grant of or does not warrant the fact that Judge Heard, in his decision going through the retaliation prongs, would. What we said was that there's no oral complaint. So that's an error. We disagree on that fact. I understand what the testimony says. Well, how can you, having just heard what I read to you, and I don't mean to belabor the point, but sometimes you've got to concede where a concession is the rational choice. Having just heard what I read to you, would you agree that there is evidence of an oral complaint? Based on Ms. Varno's testimony, yes. And therefore, would you agree that when Judge Heard said that there was no evidence of an oral complaint, that was an error? I'll have to go. I have Judge Heard's, I believe, what he said on the retaliation piece, Your Honor, if I just may get to his language. Failed to establish a prima facie case of retaliation because the plaintiff On page 16, which is on the special appendix of Ms. Varno, it states, as previously noted, plaintiff never filed a written complaint with the county defendant of any type of age and or gender discrimination. And I believe that what he was talking about is that there's the policies and procedures that are in place. And going back to our argument about protected activity, if there is a manual in place or proper procedure to complain, that was never followed in this case. So Ms. Varno does testify in her deposition that she made that statement to Ms. Babcock. Our point being that she never formally complained of age or sex discrimination. I don't mean, I didn't mean to belabor that with you, but I wanted to bring it back to what Judge Heard had, what his decision was saying. So it's a distinction between a written complaint and an oral complaint. Well, I think there is, and especially when you have in a municipality or any employer that has written policies in place to follow those policies so the county employer here would be on notice of what the specific complaints were. My time has run out. There's a lot of issues here. I don't know if the court has any other questions. I will just point out that in the next sentence on page 4, the district court says, nor did she ever make even an informal or oral complaint or objection to the defendants that she was being treated differently because of her gender and her age. Yes, he follows up. I believe, and I don't want to speak for Judge Heard, that he was talking about the, because again, he says a written complaint with the county defendant. Okay. Okay. Any other questions, Your Honor? Thank you. Well, if I may begin. I jotted several notes to respond. Well, first of all, when I talked to Susan Badcock in the HR department, she told me that when there are issues, it's to be resolved between the manager and the employee, that the HR is not getting involved in issues between the manager and the employee. I wanted nothing to get along and do a great job, so I didn't want to continue to escalate. I just wanted to prove that I was doing a great job. While I was working there, the Canfield, who was the director of the department, continually told me he was happy with my work. It wasn't until after I filed the EEOC complaint September, or I filed the EEOC complaint, and I believe it was June of 2010, defendants came back with a seething employer statement of position that describes me as I can't learn, I can't remember, I can't communicate, I can't, all these dramatic, you know, like it sounds like it would be miraculous if I could tie my shoe, that that was after I filed the EEOC complaint. The day, I believe it was April 20th in 2010, when Donald Canfield told me I was losing my job, he looked me in the eye and he said, there's nothing to do with your work. So it's like, okay, I wasn't going to complain about him at that time, although the younger male staff were making issues, exaggerating little things out of big things. I thought, well, as long as he's the director and he's saying I'm okay, I'll just keep going forward. He drew, when I asked him for an explanation when he told me I lost my job, he said, well, I can't explain it in words. He drew a picture of a box and an X. And that could be, you know, that's mysterious as far as I'm concerned. So that was one of the reasons why I didn't escalate further while working there. But it's also in the testimony, in my response to the defendant's interrogatories, that while I was confiding to Susan Babcock about the way the younger male staff seemed to be switching blames for things they caused and exaggerating minor issues, where I was contemplating making an issue out of it, that she did tell me that she said, to be honest with you, and this is my testimony, she said directly to me, she said, I don't see eye to eye with the director, but the only thing I can say is they're not an EEOC organization. And that is in my testimony in the interrogatories. And so in a situation like that, how can I complain when all I wanted to do was do a great job and get along with everyone? Thank you for your argument this morning. Thank you both. We have your arguments and we have your briefs and records, and as is evident, we are carefully perusing them. We will take the matter under submission.